STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Jarrell H. CHATHAM et al., Appellees.

No. 15450.

Court of Civil Appeals of Texas. Dallas.

Nov. 7, 1958.

Rehearing Denied Dec. 12, 1958.

Leachman, Gardere, Akin & Porter and Gordon H. Rowe, Jr., Dallas, for appellant.

Mullinax, Wells & Morris,. Strasburger, Price, Kelton, Miller & Martin, William C. Martin, Jr., Dallas, for appellees.

YOUNG, Justice.

Chatham as appellant's insured, sued for indemnity under his Texas Standard Automobile Policy, following a collision of his car with that of another, resulting in personal injuries and property damage to third parties; defendant company pleading no policy coverage under its terms and the undisputed facts. On trial to the Court, judgment was rendered in favor of plaintiff and the intervenor Fitzek, followed by defendants' appeal. Rights and liabilities of the parties hereto are further admittedly governed by Article 6701h, Vernon's Ann.Civ. St., Texas Safety Responsibility Law. The controversy, in perspective, requires a considerable detail of material facts along with applicable provisions of above Statute.

Chatham, an employee of East Texas Freight Lines, had suffered a previous suspension of driver's license, not renewable except upon proof of financial responsibility pursuant to Section 17 of the Act. The motor vehicle liability policy issued to insured was under the Assigned Risk Plan (Section 35) and was an operator's policy (Section 21–C), effective from October 2, 1954 to October 2, 1955. A similar policy had been issued to Chatham for the preceding year, both specifically excluding coverage for any automobile owned by or registered in name of said insured. Chatham, while driving his 1947 Pontiac, acquired on Sept. 22, 1954, collided with the car of E. J. Fitzek on November 6, 1954, the latter bringing suit

against Chatham who called upon appellant State Farm to defend the suit which it refused to do on grounds that at time of the collision Chatham was operating an automobile which he owned and thereby specifically excluded from coverage under the policy issued to said assigned risk. Subsequently a judgment was entered against Chatham for $2,755 in favor of Fitzek; the former instituting the instant suit against State Farm to recover amount of this judgment plus attorney's fees; Fitzek in turn intervening to claim benefit of the same judgment; and upon trial of the present case, judgment was rendered against State Farm requiring it to indemnify Fitzek in amount of $2,755, interest and costs; also for Chatham in attorney's fees of $500 and costs.

Proof of financial responsibility is satisfied under the requirements of Art. 6701h by issuance of two kinds of liability policies, either an "owner's" or an "operator's" policy; Section 21 providing in part (emphasis ours):

"(a) A 'motor vehicle liability policy' as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified as provided in Section 19 or Section 20 as proof of financial responsibility, and issued, except as otherwise provided in Section 20, by an insurance company duly authorized to write motor vehicle liability insurance in this State, to or for the benefit of the person named therein as insured,

"(b) Such *owner's policy* of liability insurance:

"1. Shall designate by *explicit description* or by appropriate reference *all motor vehicles with* respect to which coverage is thereby to be granted; * *

"(c) Such *operator's policy* of liability insurance shall pay on behalf of the insured named therein all sums which the insured shall become legally obligated to pay as damages arising out of the use by him of any motor vehicle *not owned by him,* within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

"(d) Such motor vehicle liability policy shall state the name and address of the name insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this Act as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this Act.

"(e) Such motor vehicle liability policy shall not insure:

"1. Any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law;

"2. Any liability on account of bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; nor

"3. Any liability because of injury to or destruction of property owned by, rented to, in charge of or transported by the insured.

"(f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance company with respect to the insurance required by this Act shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by

any agreement between the insurance company and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy; * *.

"4. The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Act shall constitute the entire contract between the parties."

Section 18 provides in part:

"Proof of financial responsibility when required under this Act with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle may be given by filing:

"1. A certificate of insurance as provided in Section 19 or Section 20; * * * 4. * * * No motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such proof shall be furnished for such motor vehicle."

Section 19 headed "Certificate of insurance as proof" provides:

"(a) Proof of financial responsibility may be furnished by filing with the Department the written certificate of any insurance company duly authorized to write motor vehicle liability insurance in this State certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate, and *shall designate by explicit description* or by appropriate reference *all motor vehicles covered* thereby, *unless the policy is issued to a person who is not the owner of a motor vehicle.*

"(b) No motor vehicle shall be or continue to be registered in the name of

any person required to file proof of financial responsibility unless such motor vehicle is so designated in such certificate."

In this connection Ernest Gould, on behalf of State Farm testified that the certificate of financial responsibility (Form No. 22 relative to Chatham's insurance) was filed by defendant company with the Department of Public Safety at Austin; the blank space therein for "operator's policy" only being checked, with no description of an automobile shown in such certificate.

The policy in question recited in front portion "exception-item $\frac{2}{84}$ named operator—26 financial responsibility surcharge"; also the words "Assigned Risk" and "See 84 End", inserted in blank space left for description of an automobile. Endorsement 84 formed a part of the policy just as Chatham received it, which he read, same labeled "operator's policy, any automobile"; the policy elsewhere containing paragraph IVa stating (a) "Automobile. Except where stated to the contrary, the word 'automobile' means: (1) 'described automobile—the motor vehicle or trailer described in this policy.'"

Endorsement 84 provided "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property damage liability applies subject to the following provisions: 1. The insurance applies to the name insured and to the spouse thereof if a resident of the same household, as insured, with respect to any automobile operated or occupied by such named insured or spouse.

"2. The insurance applies to any person, as insured, with respect to his presence in such automobile with the named insured or spouse but not his operation of the automobile.

"3. The insurance does not apply:

"(a) To any automobile owned by or registered in the name of the named insured or spouse;

"(b) To any person or organization, or to any agent or employee thereof, operating

an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

"(c) Under paragraph 2:

"(1) To any automobile owned by or registered in the name of the insured;

"(2) To any employee with respect to injury or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

■ Appellant's sole point of error complains of the Trial Court's action in entering judgment for plaintiff and intervenor "on the basis that there was liability insurance coverage present and in force for benefit of appellees, even though the automobile involved in the collision was *owned* by the named insured". Appellees by counterpoint denied the assertion that Chatham *owned* the 1947 Pontiac on September 22, 1954 within meaning of any policy exclusion. Here it is the contention of appellees that Chatham merely "received possession" of the newly acquired Pontiac from car dealer McInnish on the earlier date and it was not until November 2 that title thereto was assigned to him by the prior owner; under Section IVa, (4) of the policy he having thirty days thereafter to notify the insurance company and complete the coverage as to a newly acquired automobile, the collision occurring November 6th. Chatham had testified however that he did not notify defendant company of his purchase from McInnish which was on terms of $100 cash and $10 per week until fully paid. Appellees' said counterpoint is without merit on the following grounds: (1) Section IVa, (4) of this Texas Standard Policy obviously relates to an "owner's" policy; the newly acquired automobile to be in replacement of the automobile *described* in the policy. Chatham's policy was of the operator's type, with liability limited to "damages arising out of use by him of any mo-

tor vehicle not owned by him;" and (2) Chatham's installment purchase of his 1947 Pontiac on September 22, 1954 with right of possession constituted ownership of the car as of that date; see definition of "Owner", Article 6701h, Article 1, Section 8. It would appear therefore that appellant's defense of no coverage or liability must be sustained; the collision arising from use by appellee Chatham of an automobile *owned* by him.

There are no Texas cases in point bearing upon the instant claim of liability. However a fact situation markedly similar is reflected in Employers Liability Assurance Corporation v. Roux, 98 N.H. 309, 100 A.2d 416; New Hampshire having a Motor Vehicle Safety Responsibility Law substantially similar to the Texas Act; the cited case holding (Syl. 1) that "where named 'operator policy' provided coverage for insured while operating 'any other automobile' except automobile owned by him or furnished for his regular use, and no automobile was described in policy, statutory motor vehicle liability policy endorsement incorporating in policy by reference all provisions of Financial Responsibility Act did not incorporate provision relating to 'insured's motor vehicle', but only provision relating to automobiles not owned by insured, and hence insurer was under no obligation to defend or indemnify insured with respect to claims arising out of accident in which insured drove automobile he owned."

In Russell v. Lumbermen's Mutual Cas. Co., 237 N.C. 220, 74 S.E.2d 615, 619, (with Motor Vehicle Liability Statute and standard form automobile policy almost identical to that of our own jurisdiction) a like contention was disposed of thusly (emphasis ours): "In the light of these provisions of the article, it seems clear (1) that an owner's policy is intended to afford protection in the operation by the owner of a vehicle owned by him as designated and described in the policy; and (2) that an operator's policy only insures the person named therein against loss from liability imposed upon

him by law for damages 'arising out of use by him of any motor vehicle *not owned by him*'. And, applying the provisions of the article to case in hand, it appears that Dallas Garland Carrick, whose operator's license had been suspended, because of two charges of reckless driving, desiring to have said license again issued or reinstated, applied for, and obtained *by the assigned risk plan* an operator's policy in compliance, and not in conflict with the provisions of the Motor Vehicle Safety and Responsibility Act. Article 9 of Chapter 20 of General Statutes. And at the time of the accident he was not operating, nor was he present in the motor vehicle involved therein. * * * *There is no coverage and no liability on account of the accident.*" See also Howell v. Travelers Indemnity Co., 237 N.C. 227, 74 S.E.2d 610; Miller v. New Amsterdam Cas. Co., 245 N.C. 526, 96 S.E. 2d 860; American Cas. Co. of Reading v. Cioffi, 49 N.J.Super. 6, 138 A.2d 757; Ohm v. Fireman's Fund Indemnity Co., 211 Or. 596, 317 P.2d 575.

■ But appellees contend that in these other jurisdictions there was no Section 19(b) providing that no motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such motor vehicle is so designated in such certificate (referring to the certificate of insurance SB 22 filed by the Insurance Company with the Department of Public Safety); that such proviso 19(b) has the effect of rendering void the registration by Chatham of the 1947 Pontiac or issuance of certificate of title to him; with the result that he

had never taken himself out of the category of "operator", and at time of the accident was operating a motor vehicle not owned by him. We are unable to follow appellees' logic or reasoning; the office of Section 19(b) being no more, in our opinion, than to authorize the Department to refuse the registration of a personally acquired automobile to an assigned risk, such as Chatham, or if mistakenly issued, to continue its registration until proof of financial responsibility is filed in form of an owner's policy of insurance along with designation of motor vehicle with respect to which coverage is hereby granted (Section 21(b) 1). Similar Departmental authority is explicit in Section 17(a) and 17(b); the latter Section reading in part: "nor shall any motor vehicle be thereafter registered in the name of such person until permitted under the Motor Vehicle Laws of this State and not then unless and until he shall give and thereafter maintain proof of financial responsibility."

Appellant's certificate, filed with the Department of Public Safety, relating to an operator's policy was in compliance with the Statute, safeguarding the public against operation by Chatham of automobiles as "a person who is not the owner of a motor vehicle". Defendant company had no knowledge of the acquisition by Chatham of a personal car. And manifestly its operator's policy cannot be converted into an owner's policy because of mistaken departmental registration in Chatham's name of a personal car without requisite proof of financial responsibility incident to a vehicle owned by him.[1]

---

1. In a situation closely analogous, the Oregon Supreme Court held in Ohm v. Fireman's Fund Indemnity Co., supra, 211 Or. 596, 317 P.2d 577, as follows: "While we agree with the plaintiff that the legislature did not intend to leave any 'loophole' for operators of motor vehicles under the provisions of the Oregon Motor Vehicle Safety Responsibility Act, it did not intend to 'plug the loophole' as contended for by the plaintiff, but as follows: ORS 486.425: 'Whenever any proof of financial respon-

sibility no longer fulfills the purposes for which required, the department shall require the furnishing of other proof meeting the requirements of this chapter. If such proof is not so furnished the department shall suspend the license and registration or the nonresident's operating privilege of the person required to furnish it'. This section furnished an administrative procedure with which the legislature must have intended to 'plug the loophole.' The burden of determining when an individual's proof of

Appellees advance other theories of recovery, any of which, they say, constitute sufficient basis for a plaintiff's judgment. In our opinion said grounds or theories are untenable as will be demonstrated briefly. Here it should be noted that the form of Texas Standard automobile policies approved by the State Board of Insurance Commissioners (Art. 5.06, Insurance Code, V.A.T.S.) contains basic provisions applicable to all policies; being converted into either an owner's policy, Section 21(b) 1, or operator's policy, Section 21(c), by a rider; in this instance endorsement 84, "operator's policy."

■ Appellees argue that above-quoted Endorsement 84 is ambiguous, requiring a construction favorable to them in that the insurance is first stated to apply to "any automobile operated or occupied by such named insured or spouse"; in 3a "that the insurance does not apply to any automobile owned by or registered in the name of the named insured or spouse"; the result being that the first paragraph affords coverage, while paragraph 3 attempts to take it away. No ambiguity is seen under the definition of "automobile" in the basic Standard form as a motor vehicle "described in this policy". As no automobile is described in Chatham's policy, coverage thereunder is obviously limited to the use of any motor vehicle *not owned* by him (Sec. 21(c);) the paragraphs in question being entirely consistent. In this connection, it is pointed out that Endorsement 84 attached to the policy was obsolete; admittedly so by defendant in letter to its agent after the accident, forwarding the 1954 revised form of rider which should have been attached, reading in material part that "The insurance does not apply (a) to any automobile owned by the named insured or spouse". There is only a minor difference in wording of these two exclusions; not such a variation as would invalidate the

entire endorsement. By a fair construction of either there is no coverage afforded.

■ Appellees urge an estoppel by defendant to deny coverage in the following: that Bob Manning, or Tucker-Manning Insurance Agency, who sold the policy to Chatham, informed him that said insurance was adequate protection in his driving of any automobile on streets or highways. Mr. Manning did not testify at the trial; objection to Chatham's testimony being made on grounds of hearsay; also violative of the parol evidence rule, as seeking to modify, alter or add to the terms of a written instrument. Chatham, though having actually read Endorsement 84, made no objection to the policy as written. There was no showing of knowledge by the Company of these claimed representations. Objection to the construction placed upon the policy by Manning should have been sustained and same cannot serve as any basis for a plaintiff's judgment on grounds of estoppel. Art. 21.04, Insurance Code headed "Solicitor Deemed Company's Agents" provides in part: "but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy." Condition 19 of the policy in suit is to the same effect. See also 24-B, Tex.Jur. p. 282; United States Casualty Co. v. Metcalf & Thomas, Tex.Civ. App., 272 S.W. 539; Darnell v. Southwestern American Ins. Co., Tex.Civ.App., 240 S.W.2d 509; National Life Underwriters v. Miller, 274 S.W. 169; Reserve Life Ins. Co. v. Wilkins, Tex.Civ.App., 278 S.W.2d 904.

The judgment under review is accordingly reversed and set aside; and in lieu thereof judgment is here rendered in favor of appellant, State Farm Mutual Automobile Insurance Company.

Reversed and rendered.

financial responsibility is inadequate falls upon the department and not upon an insurer, for, even after an administrative determination of inadequacy, it

leaves with the assured a choice of compliance with the finding of the department or loss of this license."