PAN AMERICAN INSURANCE COMPANY, Appellant,

v.

Johnny Earl CLAUNCH et al., Appellees.

No. 7550.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 20, 1965.

Rehearing Denied Jan. 17, 1966.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellant.

Gordon, Gordon & Buzzard, James M. Bowers, Pampa, for appellees.

CHAPMAN, Justice.

Appellant, Pan American Insurance Company, filed suit against Johnny Earl Claunch and others seeking a declaratory judgment judicially determining that its insurance policy issued to Claunch provided no coverage for an accident occurring subsequent to the date of the issuance of the subject policy. The case was tried to a jury and a verdict instructed against the insurance company at the close of the testimony. One point of error is urged, appellant contending there was a fact issue raised as to whether the policy of insurance issued to Claunch contained an endorsement excluding Claunch as an assured.

At the time of Claunch's application for insurance was made to the Texas Motor Vehicle Assigned Risk Plan on July 15, 1963, he was under a driver's license suspension resulting from a conviction for driving while intoxicated. The application disclosed this fact and stated he was then eligible to have his driving license restored. He certified that he had tried but had been unable to obtain liability insurance in Texas. In a supplement to his application he also recited his understanding that proof of financial responsibility would not automatically reinstate his license and he would not drive any motor vehicle until the driver's license was actually reinstated. The form also recited that driving before the time his license was restored would be sufficient cause for cancellation of the insurance.

These described forms were sent to the Texas Motor Vehicle Assigned Risk Plan with the required premium. The application was assigned to appellant and received by it on July 22, 1963. The premium was accepted as the correct amount of the standard premium for owner's coverage and addi-

tional risk surcharge and other surcharges for SR 22 filing.[1] The SR 22 supplied to Claunch was dated July 25, 1963, and mailed to Duncan Insurance Agency at Pampa, along with the policy. The correct filing fee and SR 22 were then mailed to the Department of Public Safety and Claunch's driver's license was restored to him on August 18, 1963.

On October 3, 1963, Claunch was involved in an automobile collision within the City of Pampa while driving the insured automobile, a 1963 Plymouth Sedan. One of the victims was Benny Bennett, who filed suit against Claunch and secured a judgment for $6,000, which was affirmed by this court in an opinion announced on September 20, 1965. No motion for rehearing was filed in our court following said opinion.

The subject policy listed Johnny Earl Claunch as the insured and described as an owned automobile a "1963 2-dr. sedan." It promised to pay on behalf of the insured all sums he would become legally obligated to pay because of:

"A.  Bodily injury * * * sustained by any person;

B.  Injury to or destruction of property * * * arising out of ownership, maintenance or use of the owned automobile or any non-owned automobile, * * *."

Appellant's contention that the policy did not cover the collision of October 3, 1963, is based on its claim that it contained an endorsement described as Form 119, and which will be hereinafter referred to as End. 119. It provided that the policy did not apply to any claim arising from accidents which occur while any automobile is being operated by Johnny Earl Claunch.

We believe the contention of appellant is without merit and that no fact issue was raised in the trial court from which this appeal was perfected.

---

[1]. SR 22 is a form prescribed by the Department of Public Safety showing evidence of insurance as required by the Financial Responsibility Law and describes the type of coverage afforded.

When one is convicted of an offense whereby the law also suspends his driver's license, Article 6701h, Sec. 17(b), Vernon's Ann.Tex.Civ.St. provides the license shall remain suspended " * * * until he shall give and thereafter maintain proof of financial responsibility." Section 18 of said article provides alternate methods of making the proof required in 17(b), one of which is a certificate of insurance as provided in Sec. 19 of the article. That section prescribes a written certificate of motor vehicle liability insurance which " * * * shall designate by explicit description or by appropriate reference all motor vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle."

The motor vehicle liability insurance policy which is to be certified pursuant to Sec. 19 is described in various subsections of Sec. 21. Subsection (b) thereof repeats the required designation of Sec. 19 to the effect that all vehicles shall be explicitly described and then provides for the obligation of the insurer on behalf of the insured named therein resulting from damages arising out of the ownership, maintenance or use of such motor vehicle.

Subsection (c) of Sec. 21 provides an operator's policy shall pay such sums as the insured shall become legally obligated to pay as damages arising out of the use by him of any vehicle not owned by him.

The certificate of insurance required for making proof of financial responsibility to secure restoration of license after suspension is the form SR 22 that appellant supplied Claunch. It followed Sec. 19 carefully in certifying owner's coverage, leaving unchecked the block used to identify an operator's policy.[2] It described the automobile owned.

The certification by appellant of an owner's policy of liability insurance was a representation to the Department of Public Safety that it had agreed under the provisions of Sec. 21(b) to be obligated for such sums as Claunch should be required to pay as damages arising from his use of the owned automobile, within the limits of the policy. Undoubtedly, the restoration by the Department of Public Safety of his license was related to such certification.

Appellant cites as authority for its position three cases.[3] The *Albarez* case was not one where proof of financial responsibility was required, there being no pleading or proof that Silas Collins, the insured, had ever had an automobile accident. The court said:

"There is no pleading or proof in this case that Silas Collins, the insured had ever had an automobile accident, that his license had ever been suspended or revoked or that he was required to furnish proof of financial responsibility. Neither is there proof that the policy in suit was 'certified' to the Department of Public Safety as provided by the Act."

Other cases discuss the question of certified coverage, the court in National Surety Corporation v. Diggs, Tex.Civ.App., 272 S.W.2d 604 (N.R.E.) saying:

"Unquestionably such responsibility in the form of insurance policies would have the peculiar propensity and purpose to protect the public as the primary object rather than the protection of the policyholder. * * * As to the

2. "Proof of financial responsibility is satisfied under the requirements of Art. 6701h by issuance of two kinds of liability policies, either an 'owner's' or an 'operator's' policy; * * *." State Farm Mutual Automobile Ins. Co. v. Chatham, Tex.Civ.App., 318 S.W.2d 684 (N.W.H.); Art. 6701h, Section 21, subsections (a), (b) and (c).

3. Western Alliance Insurance Company v. Albarez, Tex.Civ.App., 380 S.W.2d 710 (N.R.E.); State Farm Mutual Automobile Ins. Co. v. Chatham, Tex.Civ.App., 318 S.W.2d 684 (N.W.H.); Swinney v. Pioneer Casualty Co., Tex.Civ.App., 348 S.W.2d 462 (N.W.H.).

second classification, 'motor vehicle liability insurance', as defined in the Act, is a form of proof of financial responsibility, and where it is the applicable evidence thereof it would be *'insurance required by this Act'*. However, within the second classification,—those who are required to have financial responsibility as a prerequisite to subsequent motor vehicle operation,—come only those persons who have been guilty in the past of some character of penal offense, a part of the punishment for which entailed the Department of Public Safety's suspension or revocation of their licenses to operate motor vehicles." (Emphasis theirs).

\* \* \*

"It is plain that by the provisions of law any insurance company issuing such a policy is placed on notice that in the event its policyholder should have an accident the company's contractual liability becomes absolute as of that time and is not subject to avoidance because of any violation by its policyholder of conditions recited in the contract to be conditions precedent to company liability."

The San Antonio Court of Civil Appeals *in writing* on the application of Art. 6701h to a first automobile accident speaks of *absolute* insurance when a certificate is furnished showing coverage. (Emphasis ours). McCarthy v. Insurance Company of Texas, Tex.Civ.App., 271 S.W.2d 836, syl. 1 (N.W.H.). That court said: "The sum of the above analysis is that absolute coverage results when a certificate has been furnished."

Our court in following the *McCarthy* case in a first accident situation said of the policy there under discussion: "Therefore, the policy not being required by the Texas safety responsibility act in advance of the first accident, the act was not applicable so as to make it a part of the policy. Accordingly, the insurance [in that case] was for the benefit of the insured alone

and not for the benefit of the public, \* \* \*" thus indicating the certificate of insurance as being for the benefit of the public. United States Casualty Company v. Brock, Tex.Civ.App., 345 S.W.2d 461 (writ refused). (Parenthetical statement added).

In the *Swinney* and *Chatham* cases relied on by appellant an altogether different situation is presented than in the instant case. The parties there made proof of financial responsibility in compliance with Sec. 21 (c) for *operator's policy*. (Emphasis ours). Neither owned a vehicle at the time, but later acquired them. An operator's policy provides coverage for liability for damage from use of a non-owned vehicle. The insureds' certifications were the only ones they could have correctly made, since they did not at the time own automobiles. In those cases the insurers were not contesting certified coverages, but defending on the coverages certified.

In any event appellant's agreement to delete the policy exclusion, End. 119, upon receipt of information that Claunch's driver's license had been restored precluded, in our opinion, a finding of a fact issue.

Appellant's underwriter, Bill McCann, testified End. 119 was attached to the policy at the time it and SR 22 were delivered to Duncan Insurance Agency. Kirk Duncan of that agency testified it was not. Considerable correspondence is shown in the record between Mr. Duncan and appellant concerning End. 119, and End. 204, the latter having relation to the recent increase of limits. Mr. Duncan contended in the correspondence that End. 119 was not applicable because \* \* \* "The insured is in the process of getting his license back." In reply thereto appellant responded with a letter of August 20, 1963, in which it said, inter alia:

"Until the assured obtains his license back, we still need the 119 endorsement. *When he receives it back if you will forward the information to this office we shall delete the 119 endorsement.*

In the meantime, please forward the copy we sent to you, signed by the assured." (Emphasis ours).

On August 26, 1963, Duncan Insurance Agency informed appellant by letter that Claunch's license had been reinstated. The record shows a stipulation of the parties that it was restored on August 18, 1963, the suspension having been lifted on August 9, 1963, in Safety Responsibility Case No. C–199516.

After the August 26 communication from Duncan Insurance Agency advising Claunch's license had been restored there appears to have been no communication concerning End. 119 until Claunch's collision with Benny Bennett on October 3, 1963. The record shows that twenty days later appellant wrote one of the passengers of the Claunch vehicle as follows:

"Our company is the liability carrier for Mr. Johnny Earl Claunch. It has been reported that you were a passenger in a vehicle driven by him which was involved in an accident on October 3, 1963, in Pampa, Texas."

It appears obvious that the deleting of End. 119 was considered by the parties to be automatic upon appellant being furnished information of the restoration of the driver's license of Claunch. The text writer in 30 C.J.S. Equity § 106, p. 1072, speaks thusly:

"It has frequently been stated as a maxim that equity regards as done that which ought to be done. The maxim is expressed in similar language in various cases, such as that equity regards and treats as done that which in fairness and good conscience ought to be done or should have been done, or that equity considers as done that which ought to be done.

"The maxim has been said to be equity's favorite maxim. It is closely connected with the maxim discussed infra § 107 that equity regards intent and substance rather than form, * *."

The maxim appears particularly applicable to the instant case.

For all the reasons stated, we hold no fact issue was raised, and that the trial court properly instructed a verdict. Therefore, the judgment of the trial court is affirmed.