VERONA D. RUSSELL, Administratrix of HOYT JAMES RUSSELL, Deceased, v. LUMBERMEN'S MUTUAL CASUALTY COMPANY.

(Filed 25 February, 1953.)

**1. Insurance § 43b—**

　　In the light of the provisions of the Motor Vehicle Safety and Responsibility Act, G.S. 20, Art. 9, policies obtained by the assigned risk plan are either (1) an owner's policy affording protection to the owner against liability for accidents involving motor vehicles owned by him while being driven by himself or any other person with his permission or (2) an operator's policy insuring the person named therein against loss from liability arising out of the use by him of any motor vehicle not owned by him.

**2. Same—**

　　An operator's policy issued in compliance with G.S. 20, Art. 9, does not cover such insured's liability arising out of an accident involving a vehicle owned by him but operated by another while he is not present or directing the operation of the vehicle.

Appeal by plaintiff from *Rudisill, J.,* at 20 October, 1952, Term of Forsyth.

Civil action to recover on automobile liability policy No. U 671 024 issued by defendant to Dallas Garland Carrich which carried with it a "Named Operator Endorsement," and on its face the words "N. C. Assigned Risk" and "Financial Responsibility."

The parties to this action waived trial by jury, and agreed upon statement of facts, arising upon the pleadings filed in the action, and, that, upon the basis thereof, the court might find the facts, make his conclusions of law thereon, and enter judgment thereon, subject to right of either party to except thereto and to appeal to Supreme Court for a review of judgment thus entered.

The following is the statement of facts agreed:

"1. That the plaintiff is a resident of Forsyth County, North Carolina, and is the duly appointed and acting Administratrix of the Estate of Hoyt J. Russell, deceased, having qualified before and been appointed by the Clerk of the Superior Court of Forsyth County, North Carolina.

"2. That the defendant is a mutual insurance company, organized and existing as a corporation with its principal office and place of business in Chicago, Illinois, and that it is engaged in the business of writing liability insurance and is duly licensed to engage in such business in the State of North Carolina.

"3. That at the times hereinafter mentioned, Dallas Garland Carrick, 24 years of age, was a resident of Davidson County, North Carolina, residing on Route No. 6, Box 332, Lexington, North Carolina; that under date of January 11, 1950, the said Dallas Garland Carrick made an application in writing for a policy of insurance to Charles M. Thompson, c/o Peoples Insurance Agency, Lexington, North Carolina, on Form No. W. C. 2802A, as required by the Assigned Risk Department of the Motor Vehicle Department of the State of North Carolina; that two copies of said application were forwarded by the said Charles M. Thompson to the Department of Motor Vehicles of the State of North Carolina; that a photostatic copy of said application, as signed by the said Dallas Garland Carrick, is attached hereto and made a part of this Agreed Statement to the same extent as if written out herein.

"4. That at the time Charles M. Thompson, Producer of Record, signed and mailed in the said application signed by Dallas Garland Carrick, he was the licensed representative of about ten different insurance companies licensed to do business in the State of North Carolina, and he did not know at that time whether this particular risk would be assigned to one of these particular companies or to some other company not represented by him, as members of the Assigned Risk Pool; that when the said Charles M. Thompson signed the application for insurance under the Assigned Risk Form W. C. 2802A for Dallas Garland Carrick, and as an accommodation to him he did not know that the said Dallas Garland Carrick was the owner of a truck or any other type of motor vehicle; when Dallas Garland Carrick came to the office of the Peoples Insurance Agency of Lexington, North Carolina, to secure an insurance policy under the Assigned Risk Plan, he was accompanied by one Richard L.

Morris who had been previously issued a Named Operator's Policy by Mr. Joseph H. Miller, an employee of the Peoples Insurance Agency of Lexington, who filled in the application for signing by Dallas Garland Carrick and by the said Chas. M. Thompson, and when Carrick and Morris went to the office to have Mr. Miller fill in Carrick's application, Dallas Garland Carrick asked for the same type of policy which had previously been issued to Morris, to wit: a Named Operator's Policy. At that time it was mentioned in the presence of Miller that he, Carrick, did own a truck and Miller knew this because Morris was the driver.

"5. That pursuant to the application for insurance signed by Dallas Garland Carrick as aforesaid and also signed by Charles M. Thompson, Producer of Record, the Assigned Risk Department of the Motor Vehicle Department of the State of North Carolina, as provided by law, assigned this particular risk to the defendant, Lumbermen's Mutual Casualty Company, and it was furnished with a copy of the application for insurance filed with the Motor Vehicle Department of the State of North Carolina by Charles M. Thompson, Producer of Record, for Dallas Garland Carrick, and upon the basis of this application the Lumbermen's Mutual Casualty Company issued and mailed to the said Dallas Garland Carrick, as an assigned risk and as the named insured, its 'Operator's Policy' No. U671 024, to which was attached and made a part thereof a 'Named Operator Endorsement'; that a copy of said policy, with all the endorsement thereto, is attached hereto and made a part of this Agreed Statement as fully and to the same extent as if written out herein; that the original of said policy was mailed to the said Dallas Garland Carrick within a few days after its effective date on January 25, 1950, and said policy remained in his possession thereafter, and same was in his possession on April 4, 1950, at the time of the collision hereinafter referred to.

"6. That at the time the Lumbermen's Mutual Casualty Company issued and delivered its policy No. U 671 024 to the said Dallas Garland Carrick, it executed and filed in the office of the Commissioner of Motor Vehicles of the State of North Carolina form SR 22, a copy of which is attached hereto and made a part hereof, to the same extent as if written out fully herein.

"7. That on the 4th day of April 1950 the plaintiff's intestate was involved in a collision with a tractor-trailer unit owned by said Dallas Garland Carrick and being driven at the time of said accident by one Richard L. Morris, and that at the time of said collision Dallas Garland Carrick was not a passenger in his tractor-trailer unit; that as a result of said collision the plaintiff's intestate suffered injuries which resulted in his death, and that thereafter the plaintiff instituted suit against both Carrick and Morris, and that the defendant declined to defend said suit upon the grounds, as contended by it, that the said collision and the

tractor-trailer unit involved therein were not covered by said policy of insurance, and there was no coverage under said policy with respect to said collision or any liability therefor, and that the defendant had no obligation whatsoever to defend said suit. In said action instituted by the plaintiff against Carrick and Morris the plaintiff obtained a verdict and judgment for damages in the Superior Court of Forsyth County in the sum of $10,000 for wrongful death and $500 for property damage against the said Morris and Carrick, said judgment being docketed in judgment book 113, at page 254, in the office of the Clerk of the Superior Court of Forsyth County, North Carolina; that the defendant in this action has declined to pay any part of said judgment for the same reasons that it declined to defend suit in which this judgment was obtained, as hereinbefore set out."

Upon inspection of the application for insurance, described and referred to in paragraph "3" of the statement of agreed facts, it affirmatively appears that Dallas Garland Carrick was convicted "1-49" in Denton Recorder's Court, Denton, N. C., of "an offense arising out of the operation of a motor vehicle," and that his operator's license was suspended. No motor vehicle is described in the application. To the contrary, the question calling for "description of automobile" is answered "None." And as to the "type of certificate required," the square following the word "Owner" is left blank, and a cross mark (x) is placed in the square following the word "Operator."

The "Financial Responsibility Endorsement" attached to, and forming a part of the policy, as shown in the 5th paragraph of agreed statement of facts, contains statement as to certificate of Financial Responsibility, indicating that operator's policy has been filed with the State of North Carolina on behalf of Dallas Garland Carrick, who is the named insured, and that "certificate is required because of two charges of reckless driving,—no accident."

Also attached to the policy and as a part thereof, as set forth in 5th paragraph of agreed statement of facts, is "Named Operator Endorsement" which contains these pertinent provisions: "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability applies subject to the following provisions:

" '1. The insurance applies to the named insured with respect to his operation of or presence in any automobile.

" '2. The insurance applies to any person, as insured, with respect to his presence in such automobile with the named insured but not his operation of the automobile.

" '3. The insurance does not apply: (a) to any automobile owned in full or in part by or registered in the name of the named insured; (b) to any person or organization or to any agent or employee thereof, oper-

ating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any accident arising out of the operation thereof; (c) under paragraph 2: (1) To any automobile owned in full or in part by or registered in the name of the insured; (2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.' "

Also, an inspection of form SR 22, referred to in paragraph "6" of the statement of agreed facts, discloses that Dallas Garland Carrick is referred to as "Named operator," and that "Operator's policy" is checked.

Upon these facts plaintiff prays judgment against defendant.

When the case came on for hearing in Superior Court, upon the agreed statement of facts, and, after being heard, the court being of opinion that plaintiff is not entitled to recover in this action, entered judgment that plaintiff recover nothing, and that the action be dismissed and that plaintiff be taxed with the costs.

Plaintiff excepted to the entry, and signing of the judgment, and appeals to Supreme Court, and assigns error.

*Hayes, Hatfield & McClain for plaintiff, appellant.*
*Womble, Carlyle, Martin & Sandridge for defendant, appellee.*

WINBORNE, J.   The question for decision is this: Where an insurance carrier, pursuant to the assigned risk provisions, G.S. 20-276, of the Motor Vehicle Safety and Responsibility Act, Article 9 of Chapter 20 of the General Statutes of North Carolina, issues to a named person an operator's policy, as defined by, and in accordance with the provisions of said act, G.S. 20-227 (3), does such policy, within the meaning of said act, cover liability of such person for damages arising out of operation of a motor vehicle owned by him when being operated by another, and when he is not present and directing the operation of it? The wording of the act dictates a negative answer.

The General Assembly of North Carolina in enacting the "Motor Vehicle Safety and Responsibility Act," *supra,* expressly declared that "the purposes of this Article" are, among others, "to require financial responsibility of reckless, inefficient and irresponsible operators of motor vehicles, and of operators and owners of motor vehicles involved in accidents," and that "it is the legislative intent that this Article shall be liberally construed so as to effectuate these purposes, as far as legally and practically possible." Thus it appears that financial responsibility is to be required of two classes: (1) "Of reckless, inefficient and irresponsible operators of motor vehicles," and (2) "of operators and owners

of motor vehicles involved in accidents." The provisions of the Article spell out the requirements for, and the ways and means of providing such financial responsibility.

The Article provides that unless a different meaning is clearly required by the context, " 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle," and " 'Owner' means a person who holds the legal title to a vehicle." G.S. 20-226.

Moreover, it is stated that " 'Motor Vehicle Liability Policy' when used in the article, means an owner's or an operator's policy of liability insurance certified, as provided by the article, by an insurance carrier licensed to do business in this State, or by an insurance carrier not licensed to do business in this State upon compliance with the provisions of this article, as proof of financial responsibility, or a policy issued under the provisions of the assigned risk plan described by this Article and issued by an insurance carrier authorized to transact business in this State, to or for the benefit of the named insured." G.S. 20-227 (1).

Then the article declares that "Every owner's policy shall (a) designate by explicit description, or by appropriate reference, all motor vehicles with respect to which coverage is intended to be granted; (b) Insure as insured the person named, and any other person using or responsible for the use of the motor vehicle with the permission, express or implied, of the named insured, or any other person in lawful possession, and (c) Insure the insured or other person against loss from any liability imposed by law for damages . . . because of bodily injury to or death of any person and injury to or destruction of property caused by accident and arising out of the ownership, use or operation within this State . . . with respect to each motor vehicle" within certain liability limitations. G.S. 20-227 (2).

And in the third subsection of G.S. 20-227, it is declared that "Every operator's policy shall insure the person named therein as insured against loss from liability imposed upon him by law for damages . . . because of bodily injury to or death of any person, and injury to or destruction of property, arising out of the use by him of any motor vehicle not owned by him, within the territorial limits and subject to the limits of liability set forth with respect to an owner's policy." G.S. 20-227 (3).

Thus it clearly appears that the article provides for two separate and distinct types of motor vehicle liability policies,—an owner's policy, as proof of owner's financial responsibility on the one hand, and an operator's policy as proof of operator's financial responsibility on the other hand.

And it is declared in G.S. 20-230 that ". . . any person whose operator's or chauffeur's license has been revoked or suspended under the provisions of the Uniform Drivers' License Act, as amended, shall not be

entitled to have said license again issued or reinstated until such person shall have given and thereafter maintains proof of his financial responsibility, as provided in this article . . ."

It is further provided in G.S. 20-251 that "proof of financial responsibility means proof of ability to respond in damages for liability thereafter incurred arising out of the ownership, maintenance, use or operation of a motor vehicle, . . . because of bodily injury to or death of any one person, . . . and . . . because of injury to or destruction of property in any one accident . . ."

And in G.S. 20-252 the article sets forth that "(a) Proof of financial responsibility may be made," among others, "(1) by filing with the Commissioner written certificate of any insurance carrier, authorized to do business in this State, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility," and that "this certificate shall give the effective date of the policy which must be the same as the effective date of the certificate and, unless the policy is issued to a person who is not the owner of a motor vehicle, must designate by explicit description or by appropriate reference all motor vehicles covered. . ."

Moreover, the Act also provides, G.S. 20-276, that "every person who has been unable to obtain a motor vehicle liability insurance policy through ordinary methods shall have the right to apply to the Commissioner of Insurance to have his risk assigned to an insurance carrier licensed to write, and writing motor vehicle liability insurance in this State, and the insurance carrier shall issue a motor vehicle liability policy which will meet at least the minimum requirements for establishing financial responsibility, as provided for in this article," and that "in each instance where application is made to the Commissioner of Insurance to have a risk assigned to an insurance carrier, it shall be deemed that the applicant has been denied the issuance of a liability insurance policy," etc.

In the light of these provisions of the article, it seems clear (1) that an owner's policy is intended to afford protection in the operation by the owner of a vehicle owned by him as designated and described in the policy; and (2) that an operator's policy only insures the person therein named against loss from liability imposed upon him by law for damages "arising out of the use by him of any motor vehicle not owned by him."

And, applying the provisions of the article to case in hand, it appears that Dallas Garland Carrick, whose operator's license had been suspended, because of two charges of reckless driving, desiring to have said license again issued or reinstated, applied for, and obtained by the assigned risk plan an operator's policy in compliance, and not in conflict with the provisions of the Motor Vehicle Safety and Responsibility Act. Article 9

of Chapter 20 of General Statutes. And at the time of the accident he was not operating, nor was he present in the motor vehicle involved therein. Under the unambiguous terms of the policy issued to him, there is no coverage and no liability on account of the accident.

The authorities relied upon by appellant have been carefully considered, and attention is directed to the case of *Howell v. Indemnity Co., post,* 227, where the provisions of the Motor Vehicle Safety and Responsibility Act are fully discussed by *Ervin, J.,* and applied to a case where owner's policy was involved.

The judgment below is
Affirmed.