235 S.C. 178 (1959)
110 S.E.2d 255
Alonzo ROBINSON, Plaintiff-Appellant,
v.
GEORGIA CASUALTY AND SURETY COMPANY, Defendant-Respondent, and Manie Lee Williams, Administratrix of the Estate of Inez Williams, Defendant-Appellant.
17570
Supreme Court of South Carolina.
September 1, 1959.
*179 James H. Howey, Esq., of Lancaster, for Plaintiff-Appellant, Alonzo Robinson, and Williams & Parler, of Lancaster, for Defendant-Appellant, Manie Lee Williams, Administratrix.
Messrs. Nelson, Mullins & Grier, of Columbia, for Respondent, Georgia Casualty and Surety Company.
*180 Order of Judge Littlejohn follows:
This case was tried before me at Lancaster, South Carolina, without a jury, on October 28, 1958, on a stipulation as to the facts.
The following facts appear to be undisputed: Napoleon Truesdale owned a 1956 model Chevrolet automobile. On July 1, 1957, Napoleon Truesdale purchased from St. Paul Mercury Insurance Company, hereinafter referred to as St. Paul Mercury, its automobile liability insurance policy No. 239RA3322, affording coverage up to $5,000.00 per person injured. The St. Paul Mercury policy was a standard automobile policy, and was in full force and effect at the time of the accident, hereinafter referred to Eugene Truesdale, son of Napoleon Truesdale, did not own an automobile. His driver's license had been cancelled because of conviction of driving under the influence, and he needed evidence of financial responsibility in order to obtain a driver's license. Accordingly, on October 1, 1957, he purchased from Georgia Casualty & Surety Company, hereinfater referred to as Georgia Casualty, its automobile liability insurance policy *181 No. 224069, affording $5,000.00 coverage per person injured and insuring the same 1956 Chevrolet that was covered under the St. Paul Mercury policy. At Eugene Truesdale's request, the Georgia Casualty agent filed with the South Carolina Highway Department what is commonly known as an SR-22, which was a certification that Eugene Truesdale was covered by the policy, and on the strength of which a driver's license was issued to him. The application for the insurance policy (Exhibit "I") indicated that an owner's policy was desired, and it was an owner's policy that the agent issued. The only dispute in the testimony is as to whether or not, at the time the Georgia Casualty policy was issued, its agent knew that Eugene Truesdale did not own the automobile described in the policy. However, in view of the conclusions I have reached herein, this conflict becomes immaterial. Subsequent to Eugene Truesdale's purchase of the Georgia Casualty policy, Napoleon Truesdale traded in the 1956 Chevrolet and purchased the 1958 Chevrolet, which was likewise registered in the name of Napoleon Truesdale.
Eugene Truesdale was employed as bandmaster and music teacher at a Negro school at Lancaster. Napoleon Truesdale gave his son, Eugene, the unrestricted right to use the 1958 Chevrolet. On the evening of December 18, 1957 Eugene Truesdale asked his friend, Alonzo Robinson, to take the automobile and to go to the home of Yvonne Mungo and there pick up some Victrola records which were to be used at a school dance that night. Inez Williams was riding in the car with Alonzo Robinson, and in the course of this trip an accident occurred resulting in her death. Eugene Truesdale was not in the automobile at the time of the accident.
Eugene Truesdale reported the accident to Georgia Casualty. In the course of making an investigation under a reservation of rights, Georgia Casualty discovered that Napoleon Truesdale had traded in his 1956 Chevrolet on the 1958 Chevrolet which was involved in the accident. On January *182 20, 1958, H.A. Beaman, Jr., Claims Manager for Georgia Casualty wrote his policy holder, Eugene Truesdale, advising that in view of the fact that the 1956 Chevrolet had been disposed of under the terms and conditions of the Georgia Casualty policy there was no coverage as to the 1958 Chevrolet (Exhibit "N").
Suit was thereafter instituted in the Court of Common Pleas for Lancaster County by Manie Lee Williams, as administratrix of the estate of Inez Williams, against Alonzo Robinson, Napoleon Truesdale and Napoleon Eugene Truesdale, seeking recovery of damages for alleged wrongful death. Napoleon Truesdale called on his insurer, St. Paul Mercury, to defend him under its policy, and Eugene Truesdale called upon Georgia Casualty to defend him under its policy. James H. Howey, Esq., attorney for Eugene Truesdale and Alonzo Robinson, transmitted the Summons and Complaint to Mr. Beaman, the Claims Manager for Georgia Casualty, and Mr. Beaman then wrote Mr. Howey on March 5, 1958, reiterating the fact that Georgia Casualty was not undertaking the defense of the action because there was no coverage as to the automobile described in the Complaint.
It appears that at this point negotiations were begun between Messrs. Williams and Parler, as attorneys for Manie Williams, administratrix of the estate of Inez Williams, James H. Howey, Esq., as attorney for Eugene Truesdale and Alonzo Robinson, and D. Glen Yarborough, Esq., as attorney for St. Paul Mercury. On March 24, 1958, Messrs. Williams and Parler wrote Mr. Howey offering to accept the sum of $4,500.00 in settlement of the death claim and requesting that Mr. Howey forward this information to Georgia Casualty (Exhibit "N"). Accordingly, on March 25, 1958, Mr. Howey, as attorney for Eugene Truesdale and Alonzo Robinson, wrote Georgia Casualty enclosing a copy of the letter received from Messrs. Williams and Parler, advising that he thought the settlement offer reasonable, calling on Georgia Casualty to pay the sum demanded, and advising that Georgia Casualty would be held for any excess *183 judgment under the familiar Tyger River principle (Exhibit "N"). Next on April 1, 1958, an affidavit of default as to Alonzo Robinson was filed and the case, as to that defendant, was referred to R. Lehew Bell, Esq., attorney at law, as Special Referee, to take the testimony and to make his recommendations to the Court (Exhibit "K"). On April 4, 1958, a reference was held before Mr. Bell, as Special Referee, and on that day he filed his report recommending that plaintiff have judgment against the defendant, Alonzo Robinson, in the sum of $25,000.00 (Exhibit "K"). An order for judgment by default in favor of plaintiff and against the defendant, Robinson, in the sum of $25,000.00 was entered on April 7, 1958 (Exhibit "K"). On the same day, St. Paul Mercury paid to Manie Lee Williams, as administratrix, the sum of $1,800.00 and took from Manie Lee Williams, as administratrix, an agreement entitled "Covenant Not to Sue" (Exhibit "M"). Under this instrument Manie Lee Williams, as administratrix, agreed not to prosecute any action either under the wrongful death statute or for conscious pain and suffering, against St. Paul Mercury, and agreed not to enforce or attempt to enforce against St. Paul Mercury any judgment that she might obtain against Alonzo Robinson, Napoleon Truesdale or Napoleon Eugene Truesdale by reason of the death of Inez Williams. Two of the signatures to the Covenant were witnessed by Mr. Howey, the attorney for Alonzo Robinson and Eugene Truesdale. On the same day, Messrs. Williams and Parler, as attorneys for the administratrix, filed with James H. Howey, Esq., as Probate Judge for Lancaster County, a verified petition of the administratrix, seeking Court approval of the aforementioned settlement, upon the ground that the suit was based on a doubtful claim. The petition recites that the agreement was made by St. Paul Mercury, acting on behalf of the two Truesdales. Then, James H. Howey, Esq., as Probate Judge signed an order also dated April 7, 1958, approving the settlement on the ground that he had concluded that the suit by the administratrix constituted a "doubtful claim" (Exhibit "M"). This order was consented *184 to by D. Glenn Yarborough, Esq., as attorney for Napoleon Truesdale, Napoleon Eugene Truesdale, and St. Paul Mercury Insurance Company. On the same day, April 7, 1958 plaintiff in the action by Manie Lee Williams, as administratrix, presented to the Honorable Steve C. Griffith, Presiding Judge, an order dismissing the action, with prejudice, as to the two Truesdales, and the Order was signed and filed (Exhibit "K"). On April 9, 1958, St. Paul Mercury and Alonzo Robinson sign an agreement in writing, whereby in consideration of the sum of $50.00 he released and discharged St. Paul Mercury Insurance Company from its obligation to defend Alonzo Robinson, and, within the limits of its policy, to pay such judgment as might be rendered against Robinson on account of the death of Inez Williams (Exhibit "B"). This release was approved in writing by James H. Howey, Esquire, as attorney for Alonzo Robinson. Mr. Howey, as attorney for Alonzo Robinson then filed this action against Georgia Casualty.
The fact that the Georgia Casualty Policy was certified to the State Highway Department as evidence of financial responsibility, to enable Eugene Truesdale to obtain his driver's license, has no bearing on the case, and, as a matter of fact, none of the parties have stressed it in their arguments. Sec. 46-750.22 of the Code, in listing the requirements of an owner's policy of liability insurance, provides that the policy must by explicit language describe the motor vehicle or vehicles to be covered by the policy, and the policy must contain an omnibus coverage clause which would cover any person operating the described automobile with the permission of the named insured, express or implied. The Georgia Casualty policy was issued as an owner's policy, and fully meets the requirements of the aforementioned Code section, and Eugene Truesdale, insofar as the Statute is concerned, was covered so long as he was operating the 1956 Chevrolet described in the policy. Likewise, Alonzo Robinson would have been covered while operating a 1956 Chevrolet, with the permission of Eugene Truesdale.
*185 Sec. 46-750.23 lists the requirements of an operator's policy. That section only requires that an operator's policy shall insure the named insured against loss from liability imposed upon him by law for damages arising out of the use by him of any motor vehicle now (sic) owned by him. Although the Acts of 1952, as published, also use the word "now", the context requires that the word be read as "not". Such conclusion was reached by the North Carolina Court in the case of Russell v. Lumbermen's mutual Casualty Co., 237 N.C. 220, 74 S.E. (2d) 615, in which an identical typographical error in the North Carolina Statute was so construed. Should it be concluded that because of the fact that Eugene Truesdale did not own the 1956 automobile, the policy, in effect, became an operator's policy, it would afford coverage only when Eugene Truesdale was operating the automobile, and there is no reason of public policy or otherwise which would require that Robinson be clothed with the protection that the Statute required only in the case of Eugene Truesdale. Therefore, the Safety Responsibility Statute goes out of the picture, and we must look only to the terms and provisions of the policy itself.
Insuring Agreement III of the Georgia Casualty Policy reads as follows:
"III. Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * * *"
Insuring Agreement IV of the policy reads as follows:
"IV. Automobile Defined, Trailers, Private Passenger Automobile, Two or more Automobiles, Including Automatic Insurance.
"(a) Automobile Except with respect to division 2 of coverage C and except where stated to the contrary, the word *186 `automobile' means: (1) Described Automobile  the motor vehicle or trailer described in this policy or, if none is so described, with respect to coverages A, B and division 1 of Coverage C, any private passenger automobile owned on the effective date of this policy by the named insured or by his spouse if a resident of the same household;

* * *
"(4) Newly Acquired Automobile  an automobile ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owner by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. Under Coverages D, E, F, G, H and I, when a limit of liability is expressed in the declarations as a stated amount, such limit as to the newly acquired automobile shall be replaced by the actual cash value. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."
It is, therefore, apparent that in order for Alonzo Robinson to have been covered under the omnibus clause set forth in Insuring Agreement III, he must have been operating the automobile described in the policy (Insuring Agreement IV (a) (1), or a "newly acquired automobile" as defined in Insuring Agreement IV (a) (4). The 1958 Chevrolet which Robinson was operating at the time of the accident was not the automobile described in the policy; hence, we must inquire as to whether it could be considered a newly acquired automobile within the meaning of the above quoted language of Insuring Agreement IV (a) (4).
*187 Insuring Agreement IV (a) (4) provides that to be covered as a newly acquired automobile the vehicle must be an automobile ownership of which is acquired by the named insured or his spouse, and only where it replaces an automobile owned by the insured and covered by the policy. Eugene Truesdale, the named insured, did not acquire ownership of the 1958 Chevrolet, and it did not replace an automobile owned by him. Therefore, by the clear language of the policy, there was no coverage as to Alonzo Robinson while driving the 1958 Chevrolet.
As stated by the writer of the Annotation appearing in 34 A.L.R. (2d) at page 938, no citation of authority is required to support the proposition that in the absence of a provision for the extension of coverage of an automobile liability or indemnity policy to automobiles other than those described in the policy, or of specific approval of the change, the insurer does not cover the insured's liability resulting from the use of such other automobiles. The Annotator further says:
"Another prerequisite to coverage, based on the caption of the `automatic insurance clause' as well as on the phrase `acquires ownership of another automobile', in the introductory clause, which reoccurs throughout the clause in the words `such other automobile', is that the insured acquire `ownership' of the automobile claimed to be covered."
In Aetna Casualty & Surety Co. v. Chapman, 1941, 240 Ala. 599, 200 So. 425, 427, where the insured was given the temporary use of a truck by a repair man while his own truck, specifically covered under the policy, was being repaired, it was held that the insured did not "acquire ownership" of the second truck, within the meaning of the "automatic insurance" provision, the Court stating these words clearly mean "such ownership as the ordinary man ascribes to his own".
Insuring Agreement V of the Georgia Casualty Policy provides:
*188 "V. Use of Other Automobiles. If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse or such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, division 1 of coverage C and E with respect to said automobile applies with respect to any other automobile, subject to the following provisions:
"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes (1) such named insured and spouse, and (2) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement III does not apply to this insurance." This clause permitting the operation of other automobiles is, by its clear language, available only to the named insured or his spouse. Alonzo Robinson was not the named insured, or spouse. Therefore, he was not covered while operating the newly acquired 1958 Chevrolet. This being so, Eugene Truesdale could not create coverage for Alonzo Robinson merely by giving him permission to operate the automobile.
Counsel for the plaintiff takes the position that Georgia Casualty, by accepting a premium with knowledge of a misrepresentation as to ownership of the automobile which would render the policy void ab initio is estopped to assert a forfeiture. They rely on the decision of the South Carolina Court in Dubuque Fire and Marine Insurance Co. of Dubuque v. Miller, 219 S.C. 17, 64 S.E. (2d) 8. In that case the Dubuque agent, after knowledge of the fire loss, accepted a premium and the insurance company retained it. This, the Court held, estopped the insurance company from declaring the insurance policy void ab initio. However, Georgia Casualty does not take the position that there has been a forfeiture by Eugene Truesdale of any right which he had under the policy sued on. As set forth *189 in amended Answer dated September 17, 1958, and as emphasized by counsel for Georgia Casualty, on the trial of the case, it is Georgia Casualty's position that the policy remained in full force and effect during the entire period for which premiums were paid. Even if Georgia Casualty had the right to declare a forfeiture, as contended for by the plaintiff, it did not elect to so declare, but continued to receive installments on the premium, because the policy was still in force. The premium was $80.00 due on the inception date of the policy and the payments made after the loss were simply installments on a premium which was due when the policy was issued. Had the entire premium been paid on the inception date, Georgia Casualty Company would have been under no duty to voluntarily refund any portion thereof, merely because the 1956 Chevrolet had been disposed of. Eugene Truesdale did not request a cancellation, and the reasonable assumption is that he wished the policy to continue in force. He needed the policy in order to retain his driver's license, under the provisions of the Safety Responsibility Act. Furthermore, had he purchased an automobile, the protection of the policy would have extended to the newly acquired automobile under the provisions of Insuring Agreement IV. Eugene Truesdale benefited from the fact that the policy remained in force, and nothing that Georgia Casualty did has caused him to worsen his position. Therefore, the principle of estoppel has no application.
Plaintiff also contends that when the 1956 automobile was disposed of, Georgia Casualty could have converted the policy into an operator's policy, at a considerably less premium. There is nothing in the record to indicate that there would have been any difference in the premium, nor is there any evidence that Eugene Truesdale requested such change.
The conflict in the testimony as to whether or not Georgia Casualty's agent had knowledge of the facts as to ownership of the 1956 automobile at the time he issued the policy, is of no importance. There is nothing in the Georgia Casualty policy which requires that Eugene Truesdale own the automobile *190 therein described. As stated by the Court in Ohio Farmers Insurance Co. v. Lantz, 7 Cir., 246 F. (2d) 182, 185:
"It is true that to support an action on a policy which insures a property right, i. e., against collision, fire, wind, or theft, etc., an insurable interest in the named insured must be proved. On the other hand, where an insurance policy is one of indemnity against liability for loss and injury sustained by others and caused by the use of an automobile or other property named in the policy, an insurable interest in the named insured is not a prerequisite to a recovery against the insurer."
Although the language of the policy does not make it a prerequisite that the named insured own or have an insurable interest in the automobile described in the policy, Insuring Agreement IV, quoted above, specifically, and in explicit language, requires that to be covered as a newly acquired automobile the automobile must be one acquired by the named insured. In other words to be covered as a newly acquired automobile, the vehicle must be one in which the named insured not only has an insurable interest  he must own the automobile.
September 1, 1959.
PER CURIAM.
We agree with the trial Judge in his holding that under the circumstances of this case there was no liability under the policy for which plaintiff could recover from Georgia Casualty and Surety Company. Let the Decree be reported as the Order of this Court.
Affirmed.