Kyle *v.* McCarron (et al., Appellant).

Argued March 20, 1963.   Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*James J. McEldrew*, with him *Elston C. Cole,* for appellant.

*Frank Bielitsky,* for appellee.

OPINION BY WOODSIDE, J., June 12, 1963:

This is an appeal from the entry of judgment against a garnishee.   The plaintiff, John J. Kyle, Jr., obtained a judgment against Edward McCarron for injuries suffered on December 31, 1959, while riding in a motor vehicle owned by McCarron.   The plaintiff is attempting to collect the judgment from Harleysville Mutual Insurance Company as garnishee, claiming that it is liable under an operator's liability policy issued to McCarron.   The insurance company contends that it is not liable under the policy because its liability did not extend to injuries arising out of the operation of any motor vehicle owned by McCarron.

McCarron, although under 25 years of age, has accumulated a bad record on the highways. He was convicted of operating a motor vehicle while under the influence of intoxicating liquor and his operator's license was revoked for one year. Then he was convicted of operating a motor vehicle during the period of revocation, and he was denied a license for another year. With this record he could not obtain an operator's license without proof of financial responsibility. After obtaining the liability policy here involved, he qualified for and received a *restricted* license which forbid his operating a motor vehicle of his own. Continuing his disrespect of the law, he illegally operated a vehicle of his own, had an accident, and injured his passenger. The passenger then sued him and obtained judgment against him by default, after which judgment was obtained against the garnishee. The garnishee took this appeal.

To determine the principles upon which this case must turn, it is necessary to examine the Motor Vehicle Safety Responsibility Provisions of The Vehicle Code of April 29, 1959, P. L. 58, 256, 75 P.S. §1401 et seq., and to understand the relationship of casualty insurance to these provisions.

Section 1417(a) of The Vehicle Code, supra, 75 P.S. §1417(a), provides that whenever the Secretary of Revenue suspends or revokes the license of an operator upon receiving notice of a conviction, he shall also suspend the registration of all motor vehicles registered in the name of such person until proof of financial responsibility with respect to such vehicles is given. Subsection (b) then provides that after the revocation of an operator's license and registration of any vehicle, "Such license and registration shall remain suspended or revoked and shall not at any time thereafter be renewed, nor shall any license be thereafter issued to such person, nor shall any motor vehicle be thereafter

registered in the name of such person until permitted under the provisions of this act pertinent thereto and not then, unless and until he shall give and thereafter maintain proof of financial responsibility."

Proof of financial responsibility may be furnished by filing a bond, a certificate of deposit or "A certificate of insurance as provided in section 1419 or section 1420". See §1418 of The Vehicle Code, supra, 75 P.S. §1418. McCarron qualified for an operator's license by filing a certificate of insurance.

Section 1419(a), supra, 75 P.S. §1419(a), provides: "Proof of financial responsibility may be furnished by filing with the secretary the written certificate of any insurance carrier duly authorized to do business in this State, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility."

Section 1421, supra, provides: "(a) A 'motor vehicle liability policy,' as said term is used in this article, shall mean an owner's *or* an operator's policy of liability insurance, . . ." (Emphasis supplied). It is clear from this provision that the legislature contemplated, and has provided for, two different types of liability policies to be issued by insurance companies to persons seeking to be licensed under this act—(1) an *owner's* policy of liability insurance and (2) an *operator's* policy of liability insurance. If after reading the clear language of the above subsection, there remains any doubt that the legislature contemplated the issuance of two different and distinct types of liability insurance policies, all such doubt must be dissipated by reference to subsection (b) which relates solely to an *"owner's* policy of liability insurance" and subsection (c) which relates solely to an *"operator's* policy of liability insurance" and subsection (d) which relates to both. (Emphasis supplied). Reading the Motor Vehicle Safety Responsibility Provisions of the Code as

a whole further substantiates the separation of liability policies into these two classes.

The Department of Revenue, too, has recognized the different types of liability policies. If the applicant, seeking an operator's license after suspension or revocation, files an operator's liability policy covering him only while driving a vehicle owned by another person, the department issues a restricted operator's license which does not authorize the licensee to drive a vehicle which he owns. Furthermore, on reports required of insurance companies by the Department of Revenue the limited liability of an operator's liability policy is recognized.

The appellee argues that "there is but one policy of insurance and the provisions and terms of the policy of insurance are identical in all respects whether the policy is termed an operator's policy or an owner's policy." This is not true. The appellee falls into error because he thinks that the part of the form filled in to designate the coverage of the policy is not a part of the policy but only an "endorsement". Strictly speaking, it is not an "endorsement", but even if it were, it would be a part of the policy. The whole policy, including the endorsements, must be considered in determining the liability of the insurance company, and the risk the policy was issued to cover.

Not all states which have Motor Vehicle Safety Responsibility statutes provide for these two types of liability policies, but instead require both types of coverage in all cases. See *Hartford Accident & Indemnity Company v. Come,* 123 A. 2d 267, 272 (N.H.).

It is argued by the appellee that the Pennsylvania Motor Vehicle Safety Responsibility Provisions and the liability policies issued thereunder are required in order to protect the injured and not the insured. This is true, but the provisions were not designed to protect all persons injured on highways. Massachusetts, and

recently a few other states, require liability insurance to be carried on all vehicles registered in those states. A few states go further by providing for funds to recompense for injuries to, or death of, persons who, through no fault of their own, are involved in motor vehicle accidents caused by uninsured or "hit and run" vehicles or operators. See 61 C.J.S. Motor Vehicles §563.1.

With this brief reference to the leading systems of protecting the public against operators who do not voluntarily carry liability insurance, let us examine further the system adopted by our legislature. In the first place, only a limited number of operators are required by law to establish financial responsibility. In the second place, no fund is provided for compensating those persons who are injured by uninsured or unknown motorists.

Our statute provides that when an operator, such as McCarron, seeks to obtain an operator's license, he must furnish proof of financial responsibility in one of the three methods set forth in §1418 of The Vehicle Code, supra. If he seeks to prove his financial responsibility by filing a certificate of liability insurance, there are two methods to be followed. If he wishes to operate his own motor vehicle, he must secure an owner's policy which will cover the vehicle *and* will cover him while driving other vehicles. Under §1417(b), supra, no motor vehicle may be registered in his name unless and until it is covered by liability insurance and a certificate of such insurance is filed with the Department of Revenue.

At the time McCarron obtained his restricted operator's license, no motor vehicle was registered in his name although he had title to an unregistered old Ford truck body without an engine. After receiving a license restricted to operating the vehicles of other people, he purchased an Oldsmobile engine, placed it in the Ford truck and obtained registration plates there-

for from the department without certifying that the vehicle was covered by liability insurance. This registration was illegally obtained. The department should not have issued the registration plates unless and until it received the certificate that liability insurance was carried on the vehicle sought to be registered. Whether the registration plate was issued unlawfully by oversight, misinterpretation of the law or through misrepresentation by the applicant does not appear, but it was issued. Not only did McCarron illegally obtain the registration of this vehicle, but he operated it without an operator's license, because the operator's license which had been issued to him was "restricted" to vehicles owned by others. The law attempted to protect the public and thus the plaintiff in this case in two respects. It gave McCarron no license to operate his own vehicle, and it contemplated no registration of a vehicle in his name until he had filed a certificate with the Department of Revenue showing the vehicle to be covered by liability insurance.

The appellee argues that the insurance company is responsible for McCarron being on the highway and therefore should pay for the injuries he caused by being there. McCarron had no license to operate his vehicle, and the insurance company had the right to assume that the Department of Revenue would not register a motor vehicle in his name until a certificate that the car was insured was in the hands of the department.

At the argument before us, the appellee made much of the voluntary act of the insurance company in issuing this policy. It is of little importance to the determination of this case, but apparently *no* insurance company wanted to write this risk. It came to the Harleysville Mutual through the assigned risk pool. When an insurance agent or broker can find no insurance company doing business in the Commonwealth

which is willing to insure a person like McCarron, he sends the application for insurance to the assigned risk pool. All the insurance companies doing business in Pennsylvania, with the exception of two very small companies, one of which is now out of business, have participated and are now participating in the pool. All foreign companies seeking to do business in Pennsylvania join the pool before they obtain permission to do business in this Commonwealth. The plan is "voluntary" in that there is no statutory requirement that a company shall participate. The companies are assigned risks alphabetically in proportion to the total amount of similar casualty business written by them. Apparently, no insurance company was willing to voluntarily assume the risk of paying for an injury which the plaintiff was willing to risk by riding with McCarron.

When the statutory law clearly provides for two different forms of liability insurance and the Department of Revenue follows the statute in recognizing two different types of coverage, an insurance company should not be penalized for making available both statutory types of coverage. The courts should not change an operator's liability policy into an owner's liability policy by judicial fiat when the legislature directed the use of both types, but that is what the court below did in this case.

The evidence shows that the premium in this case for the "operator's policy of liability insurance" referred to in §1421(c), supra, was $289.12 and the premium for the owner's policy of liability insurance referred to in §1421(b), supra, would have been $683.24. This difference in premium demonstrates why Pennsylvania and those states with similar provisions allow an applicant for an operator's license under the Responsibility Provisions to qualify under different policies depending upon their status. The legislature decided that a person who does not own a registered vehicle should

not be required to pay the higher premium which rate-making experience shows must be charged one who does own a registered vehicle. If by the issuance of a $289 risk, of the type which is specifically provided for by statute, the insurance companies would be forced by the judicial decision to assume a $683 risk, either the companies would be forced into refusing to write operator's liability policies or would be forced to more than double the premiums charged for such policies.

The appellee seeks to have us ignore the fact that the statutory law provides for two types of liability insurance, ignore the fact that the Department of Revenue following the statute recognizes the different types of liability insurance, and ignore the fact that the insurance company in compliance with the statute and the department's practice, agreed to only a limited liability, were paid for only a limited liability, and advised the Department of Revenue of its limited liability. Disregarding all of these facts, we are asked to say that the insurance company, which issued an operator's liability policy as provided for by statute and approved and recognized by the department, is liable as though it had issued and charged for an owner's liability policy. This would be contrary to all the rules of law and justice.

If the policy issued in this case had, through endorsements or otherwise, attempted to limit its liability contrary to the Motor Vehicle Safety Responsibility Provisions, of course the attempted limitations would be void and the company would be liable. Under subsection (d) of §1421, supra, the coverage of both types of liability policies must be in accordance with the provisions of Article XIV of The Vehicle Code. But an operator's liability policy, which is a policy limited as set forth above, *is* in accordance with the provisions of Article XIV. The courts have no au-

thority to extend the liability of the insurance company beyond the contract made in full compliance with the law.

The court below and the appellee lean heavily upon *Montgomery v. Keystone Mutual Casualty Company*, 357 Pa. 223, 53 A. 2d 539 (1947). The court there found that reservations contained in the insurance policy were in conflict with the Act of May 15, 1933, P. L. 553, and therefore a nullity. (p. 226). It is interesting to note that although much of that act is carried into Article XIV of The Vehicle Code of 1959, with which we have been dealing, section 6 of the Act of 1933 upon which the Supreme Court rested its opinion in the *Montgomery* case has been completely rewritten.

If the issuance of a non-owner's policy were not provided for in the statute, of course it would be illegal, and under the holding of *Montgomery v. Keystone Mutual Casualty Co.*, supra, the insurance carrier would be liable in this case. But the policy is not in conflict with the law, and the insurance company cannot be penalized for limiting its liability in the manner prescribed by statute.

Section 1436 of The Vehicle Code, supra, 75 P. S. §1436, provides that Article XIV "shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact the provisions thereof." Thus the opinions of the courts of other states which have provisions similar to our statute must carry greater weight than they would if §1436, supra, were not contained in our statute.

The opinions of the courts of other states support our conclusion and reasoning in this case. We refer to the following cases which fully support the garnishee's position, but we do not wish to unduly lengthen this opinion by quoting from them: *Employers Liabil-*

*ity Assur. Corp. v. Roux,* 100 A. 2d 416 (N.H. 1953);
*Booth v. American Casualty Co.,* 261 F. 2d 389 (S.C.
1958); *Russell v. Lumbermen's Mutual Casualty Co.,*
237 N.C. 220, 74 S.E. 2d 615 (1953); *State Farm Mutual Automobile Insurance Co. v. Chatham,* 318 S.W.
2d 684 (Texas 1958); *Ohm v. Fireman's Fund Indemnity Co.,* 317 P. 2d 575 (Oregon 1957); *American Casualty Co. v. Cioffi,* 138 A. 2d 757 (N.J. 1958).

Judgment reversed.