George License

*Luce and Robinson,* for appellant.
*Samuel C. Holland,* for Commonwealth.

ROWLEY, J., August 22, 1966.—On February 11, 1966, a petition was presented to the court by the above named defendant asking for leave to appeal from an order made by the Secretary of Revenue suspending petitioner's motor vehicle privileges. The order required defendant to return to the Bureau of Highway Safety, not later than February 10, 1966, her 1965 registration plate no. MC52M7 and card, and all current registrations in her possession. From the notice, it appears that the suspension was based upon defendant's failure to post security as a result of an accident that occurred on September 25, 1965, in the State of North Carolina, as required by section 1405 of The Vehicle Code of April 29, 1959, P. L. 58. The suspension was to be effective until such time as the security was posted or defendant furnished a release from the other party involved in the accident. The court entered an order granting leave to appeal and making the appeal a supersedeas and fixing the 9th day of March, 1966, for a hearing thereon. The hearing was subsequently continued to June 23, 1966. At the time and place fixed, a hearing was had, and from the testimony, we make the following

## FINDINGS OF FACT

1. Appellant, Bertha M. George, is a citizen of the Commonwealth of Pennsylvania, and resides at New Sewickley Township, Beaver County, Pa., her post office address being R. D. 1, Rochester, Pa.

2. In August of 1965, appellant's son, Robert Alexander George, who was then 19 years of age and a student at Wake Forest College, North Carolina, purchased a motor scooter known as a "Rabbit" Type MS with his own money.

3. Because of Robert's age, title to the motor scooter

was taken in appellant's name, and appellant signed all of the necessary application forms for the certificate of title and registration plate to be issued in her name.

4. Appellant instructed her son, Robert, to obtain liability insurance on the motor scooter when he returned to college in North Carolina.

5. On September 25, 1965, Robert was involved in an accident while operating the motor scooter in Winston-Salem, North Carolina.

6. At the time of the accident, the motor scooter was not covered by liability insurance

7. On November 18, 1965, A. P. Godwin, Jr., the Commissioner of the North Carolina Department of Motor Vehicles, notified appellant that, pursuant to the provisions of the North Carolina Safety-Responsibility Act, she was required to post security in the amount of $5,025 for failure to have automobile liability insurance in effect at the time of the accident and, in the event of her failure to do so, her North Carolina Motor Vehicle driving privilege was suspended as of December 3, 1965.

8. Appellant did not post the security required in Commissioner Godwin's notice.

9. On December 14, 1965, Godwin forwarded to H. H. Brainerd, Director of the Pennsylvania Bureau of Highway Safety, a reciprocity certification, and requested Mr. Brainerd to take such action against appellant as was authorized by the laws of Pennsylvania.

10. On December 29, 1965, Brainerd notified appellant that unless she complied within (20) days with the order of North Carolina regarding the posting of security, her motor vehicle privileges in Pennsylvania would be suspended.

11. On January 31, 1966, appellant was notified by Mr. Brainerd that her motor vehicle privileges were suspended for failure to post security as a result of an

accident that occurred on September 25, 1965, in the State of North Carolina, in violation of section 1405 of the Pennsylvania Financial Responsibility Act (sec. 1405 of The Vehicle Code.)

12. Appellant's motor vehicle privileges were restored because of the supersedeas granted by this court on February 11, 1966.

## DISCUSSION

Section 1405 of The Vehicle Code under which appellant's suspension was ordered requires that:

". . . [T]he secretary shall suspend the license of such resident if he was the operator and *all of his registrations if he was the owner* of a motor vehicle involved in such accident": 75 PS §1405.

Appellant urges, however, that since her son, Robert, paid for the scooter and took possession of it, she is not the "owner" within the meaning of this section, and the secretary had no authority to suspend *her* registration. No authority has been cited for such a proposition.

Section 102 of the code defines "owner" in part as follows: "A person or persons holding the legal title of a vehicle. . . ."

And it provides that this meaning shall apply, unless the context clearly indicates a different meaning. We find no contrary indication in section 1405. In fact, we believe that a reading of article XIV of The Vehicle Code which contains the Motor Vehicle Safety Responsibility provisions discloses an intention on the part of the General Assembly to impose the sanction of suspension upon the registered owner of a vehicle involved in an accident.

The purpose of these provisions was discussed in Parks v. Parks, 390 Pa. 287 (1957), at pages 298-99 as follows:

"The instant statute simply represents an attempt

by the use of a sanction—to-wit, the suspense of the right to drive and registration of the vehicle—to secure for those injured in an action by an uninsured driver some redress after the happening of the accident. This statute does not require compulsory insurance on the part of the operator or owner of a motor vehicle; it is a legislative attempt to provide financial responsibility after an accident has happened so that the person injured may secure from a wrongdoer redress for his injuries. Appellants forget that even if the operator or owner, in compliance with the statute, posts security, it is still incumbent upon the person injured to establish that the operator or owner of the motor vehicle by which he was injured was liable for the happening of the accident before the security can be utilized for the payment of the damages incurred. This statute deals with the *collectibility* of damages recovered, not with *liability* for the happening of the accident; it is still necessary to prove liability before redress can be had".

Also, in Roller License, 2 D. & C. 2d 743 (Dauphin Co., 1954), at page 745, the court said:

"The object, however, of the Act of 1945 is to provide further protection to the public by requiring appropriate security from all parties involved in an automobile accident to protect persons suffering damages in these accidents, regardless of fault. It is recognized that litigation involving automobile accidents is sometimes protracted and that the legal and factual questions involved in the litigation growing out of these accidents are frequently complex. The legislature intended, then, not to make the posting of security dependent upon the entry of a judgment or any determination as to who was at fault in a given accident. It was intended by the Act of 1945 to require that all persons involved in an accident should in limine have insurance or post security, so that when the legal

responsibility for damages is ultimately determined security would be available to pay those damages".

It is also clear that the act contemplates two distinct types of liability insurance:

"Section 1421, supra, provides: '(a) A "motor vehicle liability policy," as said term is used in this article, shall mean an owner's *or* an operator's policy of liability insurance, . . .' (Emphasis supplied). It is clear from this provision that the legislature contemplated, and has provided for, two different types of liability policies to be issued by insurance companies to persons seeking to be licensed under this act—(1) an *owner's* policy of liability insurance and (2) an *operator's* policy of liability insurance. If after reading the clear language of the above subsection, there remains any doubt that the legislature contemplated the issuance of two different and distinct types of liability insurance policies, all such doubt must be dissipated by reference to subsection (b) which relates solely to an '*owner's* policy of liability insurance' and subsection (c), which relates solely to an 'operator's policy of liability insurance' and subsection (d) which relates to both. (Emphasis supplied). Reading the Motor Vehicle Safety Responsibility Provisions of the Code as a whole further substantiates the separation of liability policies into these two classes": Kyle v. McCarron, 201 Pa. Superior Ct. 403 (1963), at page 406.

"If he wishes to operate his own motor vehicle, he must secure an owner's policy which will cover the vehicle *and* will cover him while driving other vehicles. Under §1417(b), supra, no motor vehicle may be registered in his name unless and until it is covered by liability insurance and a certificate of such insurance is filed with the Department of Revenue": Kyle v. McCarron, supra, at page 408.

"The law attempted to protect the public and thus the plaintiff in this case in two respects. It gave Mc-

Carron no license to operate his own vehicle, and it contemplated no registration of a vehicle in his name until he had filed a certificate with the Department of Revenue showing the vehicle to be covered by liability insurance": Kyle v. McCarron, supra, at page 409.

It would appear that the legislature intended to encourage coverage by liability insurance of vehicles turned loose on the highway. This can most effectively be done by imposing sanctions on the registered owners. It would have been a simple matter for appellant in this case to require that the vehicle be insured before allowing it on the public highways. We believe that it would be out of keeping with the letter and spirit of the act to now hold that the registration of this uninsured vehicle which was involved in an accident could not be suspended until adequate security is posted.

For these reasons, we make the following

ORDER

Now, August 22, 1966, it is ordered, adjudged and decreed that the appeal be and hereby is denied, and that the order of the Secretary of Revenue suspending the registration of appellant be carried into execution, effective on such date as the Secretary of Revenue shall designate by notice to appellant. Costs of this proceeding to be paid by appellant.